**Motion for Rehearing Denied; Opinion of June 11, 2026 Withdrawn. Affirmed and Memorandum Opinion filed July 7, 2026.**



In The

# Fifteenth Court of Appeals

---

### NO. 15-25-00036-CV

---

**JORGE R. GUEVARA, M.D., Appellant**

**V.**

**TEXAS MEDICAL BOARD, Appellee**

---

**On Appeal from the 353rd District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-23-007371**

---

### MEMORANDUM  OPINION

We withdraw our prior opinion dated June 11, 2026 and substitute the following in its place.

Appellant Dr. Jorge R. Guevara appeals the trial court's judgment affirming the Texas Medical Board's final order imposing professional discipline. The Board found that Guevara had committed multiple violations of the Medical Practice Act (the "Act") and imposed sanctions prohibiting his association with imaging

programs and services. Because (1) the Board's order was within its statutory authority and (2) the Board's sanctions are not arbitrary, capricious, or unreasonable, we affirm.

## BACKGROUND

Guevara has been a licensed Texas physician since 1995. He is board certified in internal medicine and substance abuse.

Guevara is the sole owner and president of Medical Associates of Brownsville ("MAB"), a multi-discipline medical office with four departments: (1) radiology (including mammography), (2) family practice, (3) physical therapy, and (4) a sleep center. These departments are managed independently by their respective teams of staff. An exhibit in the administrative record contains an organization chart illustrating the structure of MAB:



While Guevara is the owner and president of MAB, he personally works in the family practice department.

Guevara is also the radiology department's radiation safety officer ("RSO") for mammography and X-ray. An RSO oversees the safe handling of radioactive

materials, as well as equipment maintenance and repairs. Under the Texas Administrative Code, an RSO's duties include establishing and overseeing operating, safety, emergency, training, and other procedures to prevent excessive radiation exposure. 25 Tex. Admin. Code §§ 289.226(n)(1), .252(f)(3). An RSO need not have a medical license. *See id.* § 289.252(f)(3) (listing minimum qualifications).

On January 10, 2019, the Texas Department of State Health Services (the "DSHS") inspected MAB's radiology department. DSHS identified several deficiencies related to the radiology department's quality assurance and control procedures, including failing to maintain a mammography medical outcomes audit program and failing to establish a system to collect and review outcome data. DSHS also found that Sergio Lugo, a mammography technologist, was unqualified and that the radiology department had failed to verify Lugo's qualifications. After the inspection, DSHS reviewed the mammography images taken between November 7, 2018 and January 9, 2019, identifying the following issues:

- "All 30 of the facility's images were of poor quality. 27 of the 30 failed images were taken by Mr. Lugo. Three of the failed images were taken by Ms. Soto. Dr. Kapilivsky failed on all 30 occasions to ensure the quality of the images."

- "On 30 occasions, the quality of the facility's clinical images failed to meet the standards of its accrediting body."

- "In many cases, Dr. Kapilivsky provided a final assessment that the patient did not have breast cancer. The reviewer disagreed with Dr. Kapilivsky's assessment in all 30 cases."

- "On 30 occasions, the facility's images were of such poor quality that they

3

did not reveal whether the patient had breast cancer."

After a hearing, an administrative law judge issued a proposal for decision and recommended that MAB be found in violation of several administrative regulations.[1] DSHS adopted the ALJ's findings of fact and conclusions of law and assessed a $105,000 administrative penalty against MAB. Guevara was not individually a party to this case (the "DSHS Case").[2]

Following the DSHS Case, on January 28, 2021, the Board filed a complaint (the "Complaint") against Guevara himself with the State Office of Administrative Hearings ("SOAH"), alleging that Guevara had also violated the Act. The Complaint asserted that Guevara, as the owner of MAB and the RSO of its radiology department, "failed to ensure that patients receiving services at his facility were provided safe and effective mammography services . . . ." The Complaint listed identical issues to the prior case, including the 30 mammography images reviewed by DSHS, and included an additional allegation that Guevara, "as the Radiation Safety Officer, failed to ensure that personnel was adequately trained."

After a hearing, the administrative law judge for this proceeding (the "ALJ") incorporated the DSHS's findings and conclusions into a proposal for decision and concluded that Guevara was subject to disciplinary action because he had done the following:

> 6.     . . . engaged in unprofessional conduct that was likely to deceive
>         or defraud the public by committing acts that (a) violated the

---

[1] In particular, the DSHS found that MAB had violated the following then-effective subsections of the Administrative Code: 289.230(w) (mammography medical outcomes audit), .230(r)(2) (qualified mammography technologist), .230(u)(1)(A) (lead physician and quality assurance), .230(v)(7) (quality control tests), .230(n)(2) (verifying employee qualifications), .230(u) (quality assurance program), .230(t)(2) (letters to patients), .226(n)(2) (radiation safety officer), and .230(n)(2) (image quality). The Administrative Code has since been amended as of June 2025.

[2] The DSHS Case is not under judicial review.

regulations governing mammography providers and their RSOs and (b) were connected to Dr. Guevara's practice of medicine. Tex. Occ. Code §§ 164.051(a)(1), .052(a)(5), .053(a)(1).

7. . . . engaged in unprofessional conduct that was likely to deceive or defraud the public by failing to adequately supervise the activities of employees under his supervision. Tex. Occ. Code §§ 164.051(a)(1), .052(a)(5), .053(a)(8).

8. . . . engaged in unprofessional conduct that was likely to deceive or defraud the public by delegating professional medical responsibility or acts to a person he knew or had reason to know was not qualified to perform those responsibilities or acts. Tex. Occ. Code §§ 164.051(a)(1), .052(a)(5), .053(a)(9).

9. . . . failed to use proper diligence in his professional practice, which constitutes a failure to practice in an acceptable manner consistent with the public health and welfare. Tex. Occ. Code § 164.051(a)(6); 22 Tex. Admin. Code § 190.8(1)(C).

Guevara filed a motion for rehearing, which the Board denied.

On August 18, 2023, the Board adopted the ALJ's finding of facts and conclusion of law and issued its final order. The final order included the following sanctions against Guevara:

1. [Guevara] shall not own, operate and act as radiation safety officer for, act as medical director for, or otherwise be associated with any imaging program including a program that performs mammography, and any facility where imaging studies, including but not limited to mammograms, are performed or interpreted.

2. [Guevara] shall not perform any imaging services.

3. [Guevara] shall not supervise or delegate to any healthcare personnel engaged in the performance of imaging studies.

The Board also noted three "aggravating factors" that it considered in its sanction determinations, including:

- the increased potential for harm to the public caused by Dr. Guevara's violations;

- Dr. Guevara's two prior Agreed Orders with the Board[3]; and

- Dr. Guevara's continuing refusal to accept responsibility for the violations that DSHS found were committed by MAB and by Dr. Guevara increases the seriousness of the misconduct.

Guevara sought judicial review in the trial court below. The trial court affirmed the Board's final order, finding that it was supported by substantial evidence and that Guevara's arguments were without merit. Guevara appealed.

## STANDARD OF REVIEW

The focus of this Court's review, as in the trial court, is on the Board's final order. We review the order for substantial evidence. Tex. Gov't Code § 2001.174 (applicable when "the law authorizes review of a decision in a contested case under the substantial evidence rule or if the law does not define the scope of judicial review"); *Tex. Med. Bd. v. Yannuzi*, No. 15-24-00048, 2025 WL 2078677, at *2 (Tex. App.—15th Dist. July 24, 2025, no pet.) (mem. op.). Under substantial evidence review, we reverse the Board's decision only if Guevara's substantial rights have been prejudiced because the order was:

(A) in violation of a constitutional or statutory provision;

(B) in excess of the agency's statutory authority;

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

---

[3] Guevara has been the subject of disciplinary action by the Board in two prior proceedings and signed an agreed order for each instance.

6

Tex. Gov't Code § 2001.174(2).

"Whether there is substantial evidence to support an agency's decision is a question of law." *Tex. Dep't of Pub. Safety v. Flores*, No. 15-24-00018-CV, 2024 WL 4887998, at *2 (Tex. App.—15th Dist. Nov. 7, 2024, no pet.) (mem. op.). Substantial evidence review "does not allow a court to substitute its judgment for that of the agency." *R.R. Comm'n of Tex. v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995).

"Review under the substantial-evidence rule is highly deferential—the issue is not whether the agency's decision is correct, but whether the record demonstrates a reasonable basis for it." *N.E. Indep. Sch. Dist. v. Riou*, 598 S.W.3d 243, 251 (Tex. 2020). Substantial evidence supporting an administrative agency's decision "requires only more than a mere scintilla, and 'the evidence [i]n the record actually may preponderate against the decision of the agency and nonetheless amount to substantial evidence.'" *R.R. Comm'n*, 912 S.W.2d at 792–93 (quoting *Tex. Health Facilities Comm'n v. Charter Med.-Dall., Inc.*, 665 S.W.2d 446, 452 (Tex. 1984)). "The findings, inferences, conclusions, and decisions of an administrative agency are presumed to be supported by substantial evidence, and the burden is on the contestant to prove otherwise." *Tex. Comm'n on Env't Quality v. Maverick Cnty.*, 642 S.W.3d 537, 547 (Tex. 2022) (quoting *Charter Med.-Dall.*, 665 S.W.2d at 453).

"Arbitrariness is a distinct ground for reversal." *Save Our Springs All., Inc. v. Tex. Comm'n on Env't Quality*, 713 S.W.3d 308, 320 (Tex. 2025). An agency "acts arbitrarily or abuses its discretion if it fails to consider a mandatory factor, considers an irrelevant factor, considers appropriate factors but reaches a completely unreasonable result, or fails to follow its own regulations." *Id.*

Finally, we review the meaning of a statute de novo. *Davis v. Morath*, 624 S.W.3d 215, 221 (Tex. 2021). "When construing a statute, our primary objective is

to determine the Legislature's intent which, when possible, we discern from the plain meaning of the words chosen." *Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 253 (Tex. 2023) (quoting *In re Est. of Nash*, 220 S.W.3d 914, 917 (Tex. 2007)). Words not "statutorily defined bear their common, ordinary meaning unless a more precise definition is apparent from the statutory context or the plain meaning yields an absurd result." *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018). Regarding regulations, "[w]hen a state agency adopts an administrative rule, it commits itself to follow the plain meaning of the promulgated text, which courts should interpret as they would a statute . . . ." *Port Arthur Cmty. Action Network v. Tex. Comm'n on Env't Quality*, 707 S.W.3d 102, 104 (Tex. 2025).

## ANALYSIS

The Act grants the Board "the power to regulate the practice of medicine." Tex. Occ. Code § 152.001(a). The Act defines "practicing medicine" as

> the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions, by a person who: (A) publicly professes to be a physician or surgeon; or (B) directly or indirectly charges money or other compensation for those services.

*Id.* § 151.002(a)(13).

The Act also authorizes the Board to take disciplinary action based on "unprofessional or dishonorable conduct that is likely to deceive or defraud the public . . . ." *Id.* §§ 164.051(a)(1), .052(a)(5). Section 164.053 states that conduct "likely to deceive or defraud the public" includes conduct in which a physician "commits an act that violates any state or federal law if the act is connected with the physician's practice of medicine." *Id.* § 164.053(a)(1). In interpreting these provisions, the Texas Supreme Court has held that "an act that violates state or federal law is subject to disciplinary action by the Board under the Medical Practice

8

Act only if the act is connected with the practice of medicine in a manner that makes it likely to deceive or defraud the public." *Aleman v. Tex. Med. Bd.*, 573 S.W.3d 796, 804 (Tex. 2019).

In three issues, Guevara asserts that the trial court erred in affirming the Board's final order because it (1) goes beyond the Board's delegated authority, (2) imposes sanctions that are arbitrary, capricious, and unreasonable, and (3) lacks substantial evidence to support its conclusion that Guevara lacked diligence in his medical practice.

## I. The Board Did Not Impose Discipline on Guevara Beyond Its Delegated Authority.

In his first issue, Guevara argues that the Board abused its discretion by disciplining him without statutory authority. The Board's Final Order made a conclusion of law that Guevara committed a prohibited practice under sections 164.052 and 164.053 of the Act. These sections are implicated when a physician "commits an act that violates any state or federal law if the act is connected with the physician's practice of medicine." Tex. Occ. Code §§ 164.052(a)(5), .053(a)(1).

The Board adopted the ALJ's conclusion that Guevara violated "the regulations governing mammography providers and their RSOs," and that such violations "were connected to Dr. Guevara's practice of medicine." Mammography practices are governed by the federal Mammography Quality Standards Act, which is enforced at the state level by DSHS under the Texas Health & Safety Code. 42 U.S.C. § 263b; Tex. Health & Safety Code § 401.423. Specific regulations pertaining to mammography facilities are included in the Texas Administrative Code. 25 Tex. Admin. Code ch. 289. Among the many Administrative Code violations that DSHS found MAB to have committed in the DSHS Case, DSHS found that "MAB violated 25 Texas Administrative Code § 289.226(n)(2) because

its *radiation safety officer* failed to ensure that facility personnel were adequately trained and complying with administrative rules." The Board incorporated DSHS's determination into the findings of fact in its final order.

Guevara does not challenge the Board's finding that he violated state law.[4] Guevara rather argues that his violation of law was not "connected with" his specific practice of medicine because his violation was based on conduct in his capacity as RSO for MAB's radiology department, which he asserts is a non-physician role.

### a. "Connected with" the practice of medicine

To qualify for discipline under section 164.053, Guevara's violation of state law must be both (1) "connected with" his practice of medicine and (2) connected in a manner that likely "deceives or defrauds the public."

We first address whether Guevara's violation of state law as an RSO was "connected with" his practice of medicine, which Guevara characterizes as the "central question in this appeal." "Typically, when applying statutes requiring a connection between two things, our analysis hinges on how direct that connection must be." *See Aleman*, 573 S.W.3d at 802.

Guevara relies on *Aleman*, in which the Board sought to discipline a physician under sections 164.052 and 164.053 of the Act for certifying a patient's death certificate by pen rather than electronically, thereby violating state law. 573 S.W.3d at 802. The Texas Supreme Court held that the Board abused its discretion because the improper certification was not "connected with the practice of medicine in a manner likely to deceive or defraud the public." *Id.* at 805–06. In so holding, the

---

[4] The Board concluded that the findings in the DSHS Case had a "preclusive, collateral estoppel effect against Dr. Guevara in this case." In response, Guevara notes that he "was not an individual party to the DSHS Case and was not personally disciplined for any conduct found in that case." It is unclear whether Guevara is challenging the extent to which he is bound by DSHS's findings. Due to the lack of a clear challenge, we refrain from addressing it any further in this appeal.

10

Texas Supreme Court contrasted the physician's actions with a failure to provide "accurate" information on the certificate, which the court stated *would* be connected with the practice of medicine in a manner likely to deceive or defraud the public. *Id.* at 805.

Texas Supreme Court went on to criticize the Board's "overly broad interpretation" of its disciplinary authority, posing a hypothetical to illustrate the danger of construing the phrase "connected with" too broadly:

> [S]uppose a physician were cited for speeding while on the way to the hospital to deliver a baby. The physician has likely violated a state law and under the Board's interpretation the physician's "act" is at least arguably "connected with" his practice of medicine. Again, however, disciplining such conduct is not consistent with either the Act's language—properly construed as a whole—or its purpose. Rather, the statute reflects legislative intent not to allow such conduct, which is in no way connected with the practice of medicine in a manner that makes the act likely to deceive or defraud the public, to be the proper subject of a disciplinary proceeding.

*Id.* at 805–06 (citation omitted).

Although Guevara is correct that *Aleman* concluded that the physician did not violate sections 164.052 and 164.053 of the Act, the Court's holding in the doctor's favor turned on the second requirement—whether pen certification and the practice of medicine were connected in such a way as to deceive or defraud the public—not the first requirement that there be a connection between the illegal act and the practice of medicine. *See id.* at 805 ("Requiring electronic certification . . . in no way addresses fraud or deception."). The Court's analysis does not doubt the existence of a connection between the certification and the practice of medicine. Indeed, Justice Boyd pointed out in dissent that "no one disputes that Dr. Aleman's failure to certify the death certificate electronically was improper and connected with the practice of medicine . . . ." *Id.* at 815 (Boyd, J., dissenting).

11

Looking beyond the Act, the Texas Supreme Court has examined the ordinary meaning of "in connection with" when discussing the phrase in other statutes. In discussing the phrase in the Texas Tax Code, the court looked to Webster's definition of "connection" as "the act of connecting: a coming into or being put in contact"; "the state of being connected or linked"; and "relationship or association in thought (as of cause and effect, logical sequence, mutual dependence or involvement)." *Hegar v. Gulf Copper & Mfg. Corp.*, 601 S.W.3d 668, 675 (Tex. 2020) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002)).

The Texas Supreme Court has also recognized that a direct relationship is not necessary for something to be "in connection with" something else, stating that, "[g]enerally, the use of the phrase 'in connection with' does not imply a material or significant connection although the context may indicate otherwise." *Tarrant Cnty. v. Bonner*, 574 S.W.3d 893, 898 (Tex. 2019) (also looking to a separate definition of "a vague, loose connective." (quoting BRYAN GARNER, A DICTIONARY OF MODERN LEGAL USAGE 287 (1st ed. 1987))). The Texas Supreme Court has also found error when an intermediate court interpreted the phrase to require more than a "tangential relationship." *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017). Applying these precedents, it is enough to satisfy the first requirement if Guevara's acts as an RSO bore some relationship or link to his family medicine practice.

Guevara argues that no such connection exists, asserting that the Board "misunderstands the role of an RSO" because an RSO does not need to be a physician. *See* 25 Tex. Admin. Code § 289.252(f)(3). Guevara instead characterizes an RSO's duties as "strictly technical and ministerial" and dealing "exclusively with the use, handling, and storage of radioactive materials." Further, Guevara states that an RSO does not determine who is qualified to perform mammograms or diagnose and treat ailments. The Board responds that Guevara's failure as an RSO is

12

connected to his practice of medicine because his "responsibilities as an RSO and physician overlapped."

We hold that Guevara's conduct as an RSO was sufficiently "connected with" the practice of medicine to be subject to discipline under the Act. As MAB's RSO, Guevara was required to "ensure that personnel [were] adequately trained and complying with" the Administrative Code. 25 Tex. Admin. Code § 289.226(n)(2). Those requirements included ensuring that MAB established a quality assurance program for its mammography services, an audit program, employed qualified personnel, and timely communication with patients. *Id.* § 289.230. These responsibilities do not exist in a vacuum—Guevara is required to perform these responsibilities specifically for MAB's radiology department. And as the Board determined in its final order, both Guevara's medical practice and MAB's radiology department "operate under the same business name (Medical Associates of Brownsville) and out of the same building, and both are owned by the same parent company, which is wholly owned by Dr. Guevara." Guevara also acknowledged in his deposition that approximately 95% of MAB's mammography patients were referred by Guevara himself in his family practice, further supporting a connection.

Guevara's state law violation need not be *within* the practice of medicine but rather *connected with* it. And as discussed above, a sufficient "connection" does not need to be "material," "significant," or anything more than a "tangential relationship." *Bonner*, 574 S.W.3d at 898; *Coleman*, 512 S.W.3d at 900. Thus, we conclude that the record evidence supports a connection between Guevara's family practice and his state law violation as RSO for MAB's radiology department.

### b. Deceiving or defrauding the public

Turning to the second requirement, Guevara's violation of state law must also be connected with his medical practice in a manner "likely to deceive or defraud the

public." Tex. Occ. Code § 164.052; *Aleman*, 573 S.W.3d at 804. Guevara argues that any deficiency as an RSO was not likely to deceive or defraud the public. Guevara briefly compares his violation to *Aleman*'s improper signing of the death certificate, which the Texas Supreme Court concluded was not likely to deceive or defraud the public.

The Board, relying on *Aleman* in part, responds that Guevara's deficiencies as RSO were likely to deceive or defraud the public because such deficiencies "likely harmed his patients." The Board asserts that Guevara had referred the vast majority of the mammography facility's patients, and that the failure to ensure the facility met quality standards risked harm to the patients because a physician "may have relied upon MAB's imaging even though it was of such poor quality that the images could not rule out breast cancer." The Board further asserts that "[d]ue to his position of authority as his patient's physician, his ownership of MAB, and his duty as RSO to ensure regulatory compliance, Dr. Guevara impliedly assured his patients of the reliability of MAB's imaging services, even though he knew or was in a position to know otherwise."

In its Final Order, the Board relied on the ALJ's conclusion that Guevara's failings as an RSO "were likely to deceive or defraud the public" because "patients received mammograms from unqualified staff, performed in a facility with inadequate quality control and quality assurance, resulting in images of such poor quality that they were useless as a cancer screening tool." The order further stated that "[g]iven his roles as owner of MAB, RSO for the radiology department, and his patients' referring physician, Dr. Guevara was uniquely positioned to know of the deficiencies in MAB's radiology department and to understand that he was placing his patients at risk by referring them to MAB for mammographs."

We hold that the record evidence supports the conclusion that Guevara's

14

deficiencies as RSO were likely to deceive or defraud the public. Guevara was responsible for ensuring that MAB followed quality control and operating and safety procedures and that personnel were adequately trained. The record shows that MAB hired Sergio Lugo in December 2019 as a technologist for MAB's radiology department. The record also establishes that Lugo's license to be a radiology technologist had been revoked in 2010. Each of the mammograms performed by Lugo was of poor quality, failing to even reveal if the patient had breast cancer. Further, the leading interpreting physician, Dr. Kapilivksy, provided final assessments that concluded that the patients did not have breast cancer when the images were of such poor quality that they did not reveal whether or not the patient had cancer. Guevara referred almost all of MAB's mammography patients.

Substantial evidence review is "highly deferential" to the agency's decision and "requires only more than a mere scintilla" of evidence from the record. *Riou*, 598 S.W.3d at 251; *R.R. Comm'n*, 912 S.W.2d at 792–93. Looking to the deficiencies in MAB's radiology department, Guevara's referrals, the poor quality of the mammography images, and Guevara's roles both as RSO and owner of MAB, the Board and ALJ found Guevara to be "uniquely positioned to know of the deficiencies in MAB's radiology department . . . ."

The Board argues on appeal that Guevara "impliedly assured his patients of the reliability of MAB's imaging services, even though he knew or was in a position to know otherwise." We agree. Patients treated with MAB's radiology services are treated under the assumption that the treatments and procedures are managed by qualified personnel and conducive to providing reliable results. Based on the findings that MAB's mammography services did not meet such standards, we hold that the record contains more than a scintilla of evidence that Guevara's state law violations as RSO were "likely to deceive or defraud the public."

15

### c. Guevara's role as MAB's owner

In addition to his arguments concerning his conduct as an RSO, Guevara argues that his "conduct as a business owner" was unconnected with his medical practice in a manner likely to deceive or defraud the public. Guevara states that the "overall gist of the ALJ's findings is that Dr. Guevara was ultimately responsible for MAB's operations." Guevara asserts that owning the parent company of a medical practice is not intrinsically connected with the owner's practice of medicine and that nothing the Act imputes the deficiencies of a medical office to its owner.

Guevara misconstrues the relevance of his role as MAB's owner. Guevara is subject to discipline under subsection 164.053(a)(1) of the Act only if he committed an act that "violates any state or federal law . . . ." Tex. Occ. Code § 164.053(a)(1). The Board's conclusion that Guevara may be disciplined under this provision is not due to any violation in his role as MAB's owner. Rather, the violation occurred in his role as an RSO for MAB's radiology department. Guevara's ownership of MAB is important only to the extent that it *supports* the connection between his violations as RSO and his family medical practice in a manner that deceives or defrauds the public. The Board did not find him liable solely for the violations of MAB's personnel. We overrule Guevara's first issue and conclude that the Board had the statutory authority to discipline Guevara.[5]

---

[5] We also note that, in his original brief on appeal, Guevara does not contest two other Act violations in the Board's conclusions of law, namely, that Guevara (1) failed to supervise the activities of his employees under subsection 164.053(a)(8) and (2) delegated professional medical responsibility or acts to a person he knew or had reason to know was unqualified under subsection 164.053(a)(9). Guevara briefly mentions the conclusion of law pertaining to delegation in his reply brief. However, the Rules of Appellate Procedure do not allow a party to raise new arguments or issues in a reply brief that were not included in its original brief. *See* Tex. R. App. P. 38.3; *Hancock v. ChampionX, LLC*, No. 15-24-00111-CV, 2026 WL 692439, at *7 (Tex. App.—15th Dist. March 12, 2026, not pet h.) ("We decline to consider the State's arguments raised for the first time in a reply brief."); *In re Commitment of Gipson*, 580 S.W.3d 476, 488 n.6 (Tex. App.—Austin 2019, not pet.) ("To the extent this constitutes a new argument, the State cannot raise it for the first time

## II. The Board's Imposition of Penalties Was Not Unreasonable, Arbitrary, or Capricious.

In his second issue, Guevara argues that the Board's sanctions are arbitrary, capricious, and unreasonable because they restrict his association with imaging programs and services entirely—restrictions that, in Guevara's view, exceed the scope of the violations related to MAB's mammography services. The Board responds that its disciplinary measures are not arbitrary, capricious, or unreasonable because they are "tailored to prevent a high risk to public health." The Board further responds that it selected the sanctions in accordance with the schedule of sanctions required by the Act.

An agency acts "arbitrarily or abuses its discretion if it fails to consider a mandatory factor, considers an irrelevant factor, considers appropriate factors but reaches a completely unreasonable result, or fails to follow its own regulations." *Save Our Springs*, 713 S.W.3d at 320; *City of El Paso v. Pub. Util. Comm'n of Tex.*, 883 S.W.2d 179, 184 (Tex. 1994). We turn to the Act and the relevant factors for sanction determinations that the Board was required to consider.

The Act requires the Board to take disciplinary action against a physician who violates its provisions or a board rule. Tex. Occ. Code § 164.001. If the Board determines that a physician has committed an act described in sections 164.051 through 164.054, the Board may "suspend, limit, or restrict the person's license or other authorization to practice medicine," including by "limiting the practice of the person to or excluding one or more specified activities of medicine . . . ." *Id.* § 164.001(b)(3).

---

in the reply brief."); *Dallas Cnty. v. Gonzales*, 183 S.W.3d 94, 104 (Tex. App.—Dallas 2006, pet. denied) ("The Texas Rules of Appellate Procedure do not allow an appellant to include in a reply brief a new issue in response to some matter pointed out in the appellee's briefs but not raised by the appellant's original brief.").

In addition, the Legislature directed that that the Board "by rule . . . adopt a schedule of the disciplinary sanctions that the board may impose . . . ." *Id.* § 164.001(f). "In adopting the schedule of sanctions, the board shall ensure that the severity of the sanction imposed is appropriate to the type of violation or conduct that is the basis for disciplinary action." *Id.* The Board adopted such a schedule with then-effective Title 22, Section 190.14 of the Administrative Code (the "sanction guidelines"). 22 Tex. Admin. Code § 190.14 (repealed 2025).[6] At the time, an office that intended to impose sanctions as a result of a SOAH hearing must have utilized these sanction guidelines. Tex. Occ. Code § 164.001(e).

The sanction guidelines include a chart listing potential sanctions ranging from "Low Sanction" to "High Sanction" that the Board may choose based on a particular violation. 22 Tex. Admin. Code § 190.14(1), (9) (repealed 2025). The Board disciplined Guevara under the following provisions of the Occupations Code: subsections 164.051(a)(1), .052(a)(5), .053(a)(1), .053(a)(8), and .053(a)(9).[7] Under the sanction guidelines, a "[v]iolation of state or federal law connected with physician's practice" under subsection .053(a)(1) of the Act allows license restriction as a high sanction. 22 Tex. Admin. Code § 190.14(9). A violation of subsections 164.053(a)(8)–(9) allows a high sanction of removing the physician's delegation or supervision authority. *Id.* In all cases, license revocation is the "maximum sanction" allowed. *Id.* § 190.14(4).

The sanction guidelines also allow the Board to "impose more or less severe

_____

[6] As of January 2025, this version of the sanction guidelines has been repealed, with a new version adopted as section 180.5. 22 Tex. Admin. Code § 180.5. For our analysis, we look to the repealed version of section 190.14, which was in effect at the time of the administrative and trial court proceedings.

[7] The Board also concluded that Guevara violated subsection 164.051(a)(6), which we discuss below.

or restrictive sanctions, based on any aggravating and/or mitigating factors listed in §190.15 of this chapter (relating to Aggravating or Mitigating Factors) that are found to apply in a particular case." *Id.* § 190.14(1). Aggravating factors may include: "increased potential for harm to the public," "previous disciplinary action by the board," or "other relevant circumstances increasing the seriousness of the misconduct." *Id.* § 190.15(a)(5), (9), (11) (repealed 2025).[8] In evaluating these considerations, the board ultimately "has the sole authority and discretion to determine the appropriate action or sanction." Tex. Occ. Code § 164.007(a-1).

Here, the Board in its Final Order restricted Guevara from (1) owning, operating, and acting as an RSO or medical director for, or being associated with, "any imaging program," (2) performing any imaging services, and (3) supervising or delegating to any healthcare personnel engaged in the performance of imaging studies. Guevara is correct to assert that these prohibitions go beyond mammography, but that does not make the prohibitions "unreasonable." After considering evidence of the numerous deficiencies in MAB's radiology department, the Board noted in the final order that "MAB has not performed mammograms since the DSHS inspection on January 2019, but has continued to provide other services such as X-ray, ultrasounds, CAT scan, and MRI." The Board, utilizing its discretion under the sanctions guidelines and considering the extent to which MAB's mammography imaging services fell short of the required standard, addressed this finding by restricting Guevara's ability to be associated with any imaging practice. Though these sanctions go beyond mammography, they fall well below the maximum sanction of license revocation.

Further, the Board considered three aggravating factors based on the record

---

[8] Similar to section 190.14, section 190.15 has been repealed with a new version adopted as subsection 180.5(b). 22 Tex. Admin. Code § 180.5(b).

19

evidence: (1) the increased potential for harm to the public due to Guevara's referrals of almost all of MAB's mammography patients to a radiology department with little or no quality control and unqualified staff, (2) Guevara's prior discipline by the Board, and (3) other relevant circumstances including Guevara's refusal to accept responsibility for the failings of MAB and himself. It is clear from the then-effective sanction guidelines that the Board had the power to impose more "severe or restrictive" sanctions based on these factors. 22 Tex. Admin. Code § 190.15(a) (repealed 2025). Thus, we hold that Guevara has not demonstrated that the Board's sanctions were unreasonable for reaching beyond mammography services. We therefore conclude that the Board did not abuse its discretion by imposing sanctions that were arbitrary or capricious.

Guevara makes two additional arguments regarding due process and RSO jurisdiction. He first argues that, by restricting his association and ownership of MAB's radiology department, the Board deprives him of property rights in his business without due process of law. Guevara cites no authority for his argument and does not explain how the administrative proceedings would not satisfy any due process requirements. He also states that the Board encroached upon "DSHS's exclusive jurisdiction to regulate RSOs—particularly where DSHS did not impose that penalty in the DSHS case." Guevara broadly cites Title 25, chapter 289 of the Administrative Code for this assertion, but he points to no specific provision that would prevent the Board from restricting his ability to serve as an RSO for an imaging practice. *See* 25 Tex. Admin. Code ch. 289. We overrule Guevara's second issue.

### III. We Need Not Reach the Issue of Whether Guevara Failed to Use Proper Diligence in His Practice of Medicine.

Guevara argues that the ALJ's findings did not describe how Guevara failed

to use proper diligence in his professional practice. He further argues that nothing in the Act or Administrative Code authorizes deficiencies in a medical office to be imputed to a physician owner. The Board responds that substantial evidence supports its finding that Guevara failed to ensure that MAB (1) established and maintained a quality assurance and control program, (2) employed qualified personnel to perform mammography imaging, and (3) provided the results of the mammography reports to each patient.

Among its conclusions of law in the final order, the Board determined that Guevara "failed to use proper diligence in his professional practice, which constitutes a failure to practice in an acceptable manner consistent with public health and welfare." The Board cited subsection 164.051(a)(6) of the Act, which states that the Board may take disciplinary action against a person who "fails to *practice medicine* in an acceptable manner consistent with public health and welfare . . . ." Tex. Occ. Code § 164.051(a)(6) (emphasis added). The Board also cited then-effective Title 22, Subsection 190.8(1)(C) of the Administrative Code, which stated that, "[w]hen substantiated by credible evidence," a "[f]ailure to practice in an acceptable professional manner consistent with public health and welfare within the meaning of the Act" includes the "failure to use proper diligence in one's professional practice." 22 Tex. Admin. Code § 190.8(1)(C) (repealed 2025).[9]

Based on subsection 164.051(a)(6) of the Act, the resolution of this issue would require this Court to decide if Guevara's role as an RSO, MAB's owner, or a referring physician would directly constitute "practicing medicine" for purposes of the Act. This is a more complicated and likely consequential question than the one presented in the first issue of whether his role as an RSO was merely "connected

---

[9] As of January 2025, this version of the violation guidelines has been repealed, with a new version adopted as section 180.1. 22 Tex. Admin. Code § 180.1.

21

with" the practice of medicine under subsection 164.053(a)(1). Neither party discusses this distinction on appeal.

We need not reach the merits of this issue or decide this question. *See* Tex. R. App. P. 47.1 (requiring a court of appeals to address every issue "raised *and necessary* to final disposition of the appeal."). Whether or not the Board was correct in its conclusion that Guevara violated subsection 164.051(a)(6), the record contains substantial evidence supporting the Board's conclusion that Guevara violated state law in connection with his practice of medicine, and that such connection is likely to deceive or defraud the public. The sanctions that Guevara identifies in his brief as arbitrary and capricious all relate to his involvement with imaging and mammography, and the sanction guidelines allowed the Board to restrict Guevara's license for a violation of section 164.052 and 164.053. These sanctions remain justified even without a violation of subsection 164.051(a)(6). *See Sensitive Care, Inc. v. Tex. Dept. of Hum. Servs.*, 926 S.W.2d 823, 828 (Tex. App.—Austin 1996, no pet.) ("It is, of course, a general rule of administrative law that a reviewing court must uphold an agency decision on any legal basis shown in the record, even though the agency may have stated an erroneous reason for its decision."); *Tex. Comm'n of Env't Quality v. City of Aledo*, No. 03-13-00113-CV, 2015 WL 4196408, at *6 (Tex. App.—Austin July 8, 2015, no pet.) ("However, the ALJ denied party status on the basis of two determinations . . . and we may affirm the Commission's order on the basis of either of those determinations, even if the other was erroneous."). Thus, the record demonstrates with "reasonable certainty that the agency would have reached the same decision notwithstanding the invalidity of one of its several conclusions of law . . . ." *Sensitive Care*, 926 S.W.2d at 829 n.7. Simply put, reversing this single conclusion of law would not mean that the sanctions would thereby "prejudice" Guevara's "substantial rights." *See* Tex. Gov't Code § 2001.174(2).

22

We make no determination as to whether Guevara violated subsection 164.051(a)(6). We state only that a resolution of this issue in either direction would not affect our decision.

## CONCLUSION

We affirm the trial court's judgment and uphold the Board's final order.

<u>/s/ April Farris</u>
April Farris
Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.